**Bennett FULBRIGHT, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–99–018–CR.**

Court of Appeals of Texas,
Fort Worth.

March 1, 2001.

Cheyenne Minnick, Fort Worth, Attorney for Appellant.

Tim Curry, Criminal District Attorney; Charles Mallin, Chief, Appellate Division; Sylvia Mandel, Trey Loftin, and Steven Jumes, Assistant District Attorneys of Tarrant County, Attorneys for Appellee.

Panel A: CAYCE, C.J., LIVINGSTON, J., and DAVID L. RICHARDS, J. (Sitting by Assignment).

## OPINION

CAYCE, Chief Justice.

### Introduction

Appellant Bennett Fulbright appeals his conviction for driving with a suspended

license. After a jury trial, his sentence was assessed at 150 days' confinement and a $100 fine. On appeal, appellant complains the trial court improperly permitted him to represent himself. Appellant asserts the court failed to adequately admonish him of the dangers and disadvantages of self-representation, so his waiver of counsel was not knowing, intelligent, and voluntarily. Appellant also contends the trial court abused its discretion by failing to appoint standby counsel. We will affirm.

## Procedural Background

Appellant was charged by complaint and information with the offense of driving while license suspended. On July 31, 1998 he appeared at a pretrial hearing and announced he was not ready for trial. Appellant stated he was representing himself because he could not afford an attorney. The judge continued the trial until September 14, at which time he apparently appointed a Fort Worth attorney, Ed Jones, to represent appellant. No record was made of that hearing. At an October 26 hearing, appellant informed the trial court that he did not want Jones to represent him, so the court removed Jones from the case. At appellant's request, the court allowed appellant to represent himself and reset the trial for November 5.

On November 4, appellant filed a motion requesting public funds to hire an attorney

of his choice to act in an advisory role.[1] The following day, appellant appeared without counsel and reiterated his desire to represent himself. In response to the trial court's inquiries about his background, appellant stated that he was a 40 year old unemployed computer programmer with a degree in computer science and engineering from the University of Texas at Arlington and work towards a master's degree from the University of Houston. Appellant indicated that he had represented himself once before in municipal court for driving without insurance,[2] did not have mental or emotional problems, and was not representing himself out of duress or coercion. Appellant stated that he did not understand the nature of the charges against him or the range of punishment, so the trial court explained that appellant was being charged with driving while his license was suspended on or before August 17, 1997 and that the punishment range was three to 180 days in jail and up to a $500 fine. The trial court also told appellant a lawyer might aid him in understanding these things. In response to the court's further questioning, appellant stated that he was "not completely" familiar with the rules of evidence governing trial procedure, but did understand his right to a trial by jury and knew the possible dangers associated with representing himself.

Regarding his right to an attorney, appellant explained to the court that he did

1. The motion, entitled "Motion to Facilitate Obtaining of Expert and Investigative Assistance" reads in pertinent part:

   Accused desires and needs expert legal assistance because he is unable to work by himself to properly prepare and present his theories of the case, evidence, and motions under the severe conditions imposed upon him.... The fund is requested for utilization in hiring a legal assistant to work under my command and provide me with counsel of my choice and secretarial and investigative services needed for defense.

   ....
   WHEREFORE it is prayed that this Court authorize the payment of a fee for the use in the purposes herein requested, with the understanding that the counsel is to be one of Accused's choice and will not act in anything other than a strictly advisory capacity and strictly under the command of the Accused and no one else.

2. The record also shows appellant was representing himself in a Dallas case.

not want a lawyer to represent him, but wanted to represent himself with assistance from court-appointed standby counsel. The following exchange occurred between the trial court and appellant:

THE COURT: Is there anyone or anything forcing you to give up your right to have a lawyer to represent you?

MR. FULBRIGHT: I don't want a lawyer to represent me.

THE COURT: So nobody's forcing you to give up that right for a lawyer to represent you?

MR. FULBRIGHT: Right.

THE COURT: No one's promised you anything to give up the right to have a lawyer represent you?

MR. FULBRIGHT: I was not promised anything.

THE COURT: You understand that if you couldn't afford a lawyer to represent you, you understand that the Court could appoint one to represent you? You understand that?

MR. FULBRIGHT: Right.

THE COURT: In fact the Court did. Okay. Knowing all that stuff, do you still wish to give up your right to have a lawyer represent you [in] this case?

MR. FULBRIGHT: Right.

THE COURT: Take a look at that. There's two places to sign.

MR. FULBRIGHT: Is this saying I give up right to assistance of counsel?

THE COURT: You have the right to have a lawyer to represent you.

MR. FULBRIGHT: As long as I retain the right to assistance of counsel, then I might have a problem. If it's saying I give up the right to assistance of counsel, then I have a problem with that and won't sign.

THE COURT: Your right to a lawyer to assist you, I'm using your semantics, you want Ed Jones to?

MR. FULBRIGHT: I've got a problem with the way this thing's worded. It says, "You have told this Court that you do not wish to have this Court appoint a lawyer to help." Well, I do need help and I've motioned for help.

What I don't want the lawyer to do is take over my powers of representation. I need advice and assistance of counsel, but I don't need him to take away my powers of representation, my control over decisions like what kind of defense to present to the jury or whether to make a request for continuation. I want to retain that control.

THE COURT: So you want Mr. Jones to come in here and sit by you and assist you?

MR. FULBRIGHT: I want assistance of counsel, and I tried to explain—

THE COURT: You want Mr. Ed Jones in here or you don't want him in here?

MR. FULBRIGHT: If that's the only assistance of counsel I can get, then I want him in here.

. . . .

THE COURT: In that regard, you understand if the Court allows you standby counsel, that you've got to make all the tactical decisions. They can't talk.

MR. FULBRIGHT: That's better than nothing.

THE COURT: Why do you want a lawyer if you don't want him to do anything?

MR. FULBRIGHT: I do want him to give advice, but I don't want him to take away my final decision as to what's said or goes forward in terms of motions and that type of thing. I want to have the final say-so on whether or not a motion gets made and I want to be able to talk

to the jury myself. I don't want to be misrepresented, and my understanding—

THE COURT: Your right to a lawyer to assist you—

MR. FULBRIGHT: The lawyer may act as counsel—

THE COURT: You want to use these words, "representation" and "assistance." I asked you if you wanted me to appoint a lawyer to assist you, and that is a lawyer to represent you. You want to use those as different semantics, but they're synonymous.

MR. FULBRIGHT: The law books I've studied especially with regard to Texas, the way I understand it, I can have assistance of counsel without having that counsel take your powers of self-representation away.

THE COURT: You can have what's called standby counsel.

MR. FULBRIGHT: Well, I need some standby.

THE COURT: And you're requesting that?

MR. FULBRIGHT: As long as I'm not by doing so giving up my powers of self-representation. I need all the help I can get without giving up my powers of self-representation. And what would you do if you were in my shoes?

THE COURT: I would have taken a lawyer to represent me.

The trial court then agreed to reappoint Jones as standby counsel and reset the trial for November 19.

Before voir dire on November 19, the following exchange occurred:

THE COURT: We were here two weeks ago, discussed Mr. Fulbright, options of self representation. Mr. Fulbright does not want an attorney to represent him, wants to represent himself. And I had considered on that date to appoint some standby counsel, but on Monday I had—Monday the following week, I had contacted Mr. Fulbright through his—through my court reporter, told him that I was not going to appoint him standby counsel, that he had to make a decision of self representation or representation by a lawyer. And you're choosing self representation; is that's [sic] correct, Mr. Fulbright?

THE DEFENDANT: That's correct.

THE COURT: However, you do not choose to sign the waiver that I gave you regarding self representation; is that correct?

. . . .

THE DEFENDANT: I found some problems. Statements in the waiver that seemed to commit me to thing—things that I didn't think were true. But I'll make a statement that I'm representing myself. In fact, I made a motion for clarification of rights and status of the parties, where I motion, and I think I be acknowledged on the status. So if my motion had been granted, then I don't think this issue would even be a question.

THE COURT: Okay. But you don't want to sign the waiver, but you are—

THE DEFENDANT: Not that particular form, but I'll sign you a statement of status saying I'm self representing myself.

THE COURT: Okay. And you understand the dangers? We have discussed those on numerous occasions.

THE DEFENDANT: Yes, sir.

On the day of trial, appellant prepared and signed a declaration, which states in relevant part:

1). I, Bennett Stephen Fulbright, am representing myself and speaking by and for myself in this case and knowing-

ly elected to do so, but have also requested expert assistance.

2). I am financially unable to hire the services I feel I need to fully prepare and conduct my defense, or to do this by myself. I have no job or signiificant [sic] available fundes[.]

During voir dire, the judge informed the jury that appellant was entitled to an attorney, but had chosen to represent himself, and all rules of evidence, procedure, and court would apply to him.

Appellant participated in both phases of his trial, conducted voir dire, gave opening and closing statements, cross-examined and presented witnesses, and made and responded to objections. In addition, he filed numerous pre- and post-trial motions.

## Waiver of Counsel

In his first two points, appellant argues the trial court erred in failing to appoint counsel because he never waived his right to counsel and because he was never adequately admonished about the dangers of self-representation. In his third point, appellant argues the trial court erred in failing to appoint standby counsel. Because the issues are intertwined, we address them together.

■■■ The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. This right may be waived, and a defendant may choose to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). However, a waiver of the right to counsel will not be lightly inferred, and the courts will indulge every reasonable presumption against the validity of such a waiver. *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex.Crim.App. [Panel Op.] 1980). A

waiver of counsel must be made competently, knowingly and intelligently, and voluntarily. *Collier v. State*, 959 S.W.2d 621, 625–26 (Tex.Crim.App.1997) (citing *Godinez v. Moran*, 509 U.S. 389, 400–01, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993)), *cert. denied*, 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 276 (1998). The decision to waive counsel and proceed pro se is made knowingly and intelligently if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Collier*, 959 S.W.2d at 626; *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex.Crim.App.1984). The decision is made voluntarily if it is uncoerced. *Collier*, 959 S.W.2d at 626.

■■ No formulaic questioning is required to establish a knowing and intelligent waiver. *See Blankenship*, 673 S.W.2d at 583. However, a trial court can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all circumstances surrounding the waiver. *Id.* A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *see also Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim.App.1992).

■■ The record must reflect that the trial court thoroughly admonished the defendant. *Collier*, 959 S.W.2d at 626 n. 8. The record must be sufficient for a reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of the self-representation. *Goffney*, 843 S.W.2d at 585; *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim.App.1988).

In this case, the record shows the trial court adequately admonished appellant regarding the dangers and disadvantages of self-representation, so that he intelligently and knowingly waived his right to counsel and instead chose to represent himself. While a detailed record of specific admonishments is one way to establish a knowing and intelligent waiver, and may be the better practice in most situations, there is "no formulaic questioning to establish a knowing and intelligent waiver." *Blankenship*, 673 S.W.2d at 583. We hold the admonishments were sufficient under the circumstances here, given appellant's sophisticated background, his high level of education, his skills, and his experience representing himself in similar cases. The record also shows appellant's waiver of his right to counsel was voluntary and not coerced.

Appellant asserts, incorrectly, that he was entitled to court-appointed standby counsel because he was indigent and refused to waive his right to counsel, either orally or in writing. The requirement of a written waiver is imposed by statute, not by the state and federal constitutions. TEX.CODE CRIM. PROC. ANN. art. 1.051(g) (Vernon Supp.2001). A written waiver is not required where, as here, the record shows the defendant did everything constitutionally required to waive counsel and assert his right to self-representation. *Burgess v. State*, 816 S.W.2d 424, 430–31 (Tex.Crim.App.1991). Moreover, appellant never deviated from his position that he wanted to represent himself in every stage of his trial and to make all of the tactical decisions in the case. Appellant only wanted a lawyer or legal assistant to "work under [his] command." It is well established that an accused has no right to this type of hybrid representation, although the trial court has the discretion to permit it. *Scarbrough v. State*, 777 S.W.2d

83, 92 (Tex.Crim.App.1989). Further, accepting an offer of standby counsel that is later retracted does not, under circumstances such as those here, waive a previously asserted right to self-representation. *Id.* at 93.

If a trial court refuses to appoint standby counsel or withdraws an offer of standby counsel, a defendant must choose between two mutually exclusive rights: the right to self-representation without standby counsel or representation by counsel. There is no middle ground. *Id.; see also Burgess*, 816 S.W.2d at 428–29. While appellant desired the aid of standby counsel, once the trial court informed him that standby counsel would not be available, appellant clearly restated his intention to represent himself. Based on these facts, we hold appellant knowingly, intelligently, and voluntarily waived his right to counsel. If the trial court had refused to allow appellant to represent himself due to his insistence on standby counsel, appellant would now be complaining that the trial court violated his right to self-representation. An accused's constitutional rights to represent himself or to choose his own counsel cannot be manipulated in such a manner as to throw the trial process into disarray. *Dunn v. State*, 819 S.W.2d 510, 520 (Tex.Crim.App.1991), *cert. denied*, 506 U.S. 834, 113 S.Ct. 105, 121 L.Ed.2d 63 (1992); *see also Hubbard v. State*, 739 S.W.2d 341, 344 (Tex.Crim. App.1987).

### Harm Analysis

In addition, even if the trial court's admonishments had been insufficient, any error would be harmless. In cases of alleged constitutional error, we apply TEX.R.APP. P. 44.2(a). The question here is whether the trial court's alleged failure to admonish appellant more fully was harmless beyond a reasonable doubt.

*See Williams v. State,* 958 S.W.2d 186, 194 (Tex.Crim.App.1997).[3] We must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the alleged error did not contribute to appellant's conviction or punishment. TEX. R.APP. P. 44.2(a); *see also Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g) (stating that constitutional errors should be analyzed in the same manner as under former rule 81(b)(2)), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

It is clear that appellant intended to represent himself, with or without standby counsel, and irrespective of the trial court's admonishments or advice that he choose to be represented by counsel. Appellant had previously represented himself in municipal court and, at the time of his trial, was also representing himself in a Dallas case. Appellant had a history of firing court-appointed attorneys in this and other cases. Also, appellant stated he wanted to represent himself because "I don't feel like I'm getting the representation I need or the type of work I need from attorneys, and the attorneys that would be of my choice I can't afford." Based on this record, we hold that the trial court's failure to admonish appellant more thoroughly was not a factor in his decision to waive counsel and represent himself. Nor was it a factor in the outcome of appellant's trial. Under the facts of this case, the outcome of the trial would be no different had appellant been more thoroughly admonished and, as a result, decided not to represent himself. Indeed, the entire record demonstrates a complete absence of harm to appellant. Accordingly, we hold beyond a reasonable doubt the alleged error did not contribute to appel-

lant's conviction or punishment. TEX. R.APP. P. 44.2(a).

Because the trial court admonished appellant adequately concerning the dangers and disadvantages of self-representation under the unique facts of this case, and because it is clear from the record that appellant knowingly, intelligently, and voluntarily waived his right to counsel, we overrule appellant's first two issues. Because the trial court did not err by refusing to appoint standby counsel, we overrule issue three.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

DAVID L. RICHARDS, J. filed a dissenting opinion.

DAVID L. RICHARDS, J. (Assigned), dissenting.

Because the record does not contain any of the trial court's admonishments to appellant concerning the dangers and disadvantages of self-representation—an absolute requirement under established Texas Court of Criminal Appeals precedence—I respectfully dissent.

The majority repeatedly asserts that appellant was "adequately" admonished about these dangers and disadvantages. I disagree. Indulging every inference in support of the State, the record, at most, shows only that appellant told the trial court that he was aware of the dangers and disadvantages of self-representation, and that the trial court, at some point, admonished appellant off-the-record on that subject. Whether those admonishments were proper or improper is unknown. The only thing we can say with

---

**3.** We respectfully decline to follow our sister court's holding that this type of error is "categorically immune to harmless error analysis."

*Manley v. State,* 23 S.W.3d 172, 175 (Tex. App.—Waco 2000, pet. ref'd).

any certainty is that the admonishments were not given on the record.

In *Goffney v. State*, 843 S.W.2d 583, 585 (Tex.Crim.App.1992), the court held that reversal is required where the record does not contain the admonishments of the dangers and disadvantages of self-representation. In the instant case, the record does not contain the admonishments given to appellant. That circumstance alone should control our decision.

The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. This right may be waived and a defendant may choose to represent himself at trial. *See Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). However, a waiver of the right to counsel will not be lightly inferred, and the courts will indulge every reasonable presumption against the validity of such a waiver. *See Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim.App.1980). The prosecution has a heavy burden to demonstrate that a waiver of counsel was made: 1) competently, 2) knowingly and intelligently, and 3) voluntarily. *Collier v. State*, 959 S.W.2d 621, 625–26 (Tex.Crim.App.1997) (citing *Godinez v. Moran*, 509 U.S. 389, 400–01, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993)), *cert. denied*, 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 276 (1998); *Faretta*, 422 U.S. at 834–36, 95 S.Ct. at 2541; *see also Geeslin*, 600 S.W.2d at 313. The decision to waive counsel and proceed pro se is made "knowingly and intelligently" if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *See Collier*, 959 S.W.2d at 626; *Burgess v. State*, 816 S.W.2d 424, 428 (Tex.Crim.App.1991) (citing *Faretta*, 422 U.S. at 836, 95 S.Ct. at 2541; *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex.Crim. App.1984)). The decision is made "voluntarily" if it is uncoerced. *Collier*, 959 S.W.2d at 626.

When a defendant asserts his right to represent himself pro se, the trial court must focus not on a traditional waiver-of-counsel analysis, but on whether the defendant is aware of the dangers and disadvantages of self-representation. *See Goffney*, 843 S.W.2d at 585; *Johnson v. State*, 760 S.W.2d 277, 278 (Tex.Crim.App.1988).[1] A defendant should be made aware of the dangers and disadvantages of self-representation so that the " 'record will establish' that one who would represent himself 'knows what he is doing and his choice is made with eyes open.' " *Goffney*, 843 S.W.2d at 585; *see also Faretta*, 422 U.S. at 836, 95 S.Ct. at 2541. This admonishment must be on the record. *Goffney*, 843 S.W.2d at 585; *Henderson v. State*, 13 S.W.3d 107, 109 (Tex.App.—Texarkana 2000, no pet.); *Walker v. State*, 962 S.W.2d 124, 126 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd). The admonishments should seek to ensure that the accused is aware of the practical disadvantages of representing himself, that there are technical rules of evidence and procedure, and that he will not be granted any special consideration solely because he asserted his pro se rights. *Johnson*, 760 S.W.2d at 278.

---

1. In addition to the constitutional requirement that the defendant be properly admonished, the code of criminal procedure requires that a defendant who wishes to waive his right to counsel be fully admonished concerning the dangers and disadvantages of self-representation. *See* TEX.CODE CRIM. PROC. ANN. art. 1.051(g) (Vernon Supp.2001). The code also requires the trial court to obtain a written waiver of the defendant's right to counsel, complying with the statutory form, but the written waiver is not mandatory if the defendant invokes his right to self-representation. *See Burgess*, 816 S.W.2d at 431.

Here, while appellant told the trial court that he understood the dangers of self-representation and acknowledged that he had in fact discussed those dangers with the judge on numerous occasions, the record is absent as to precisely what the contents of the discussions were. And although appellant acknowledged that he had represented himself before at trial, the record does not indicate whether he was ever admonished in those proceedings, the substance of those admonishments, the extent appellant participated at trial, or whether appellant understood those admonishments.

There is no formulaic questioning to establish a knowing and intelligent waiver. *Blankenship,* 673 S.W.2d at 583. However, a judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all circumstances. *Id.*

The trial court is charged with the responsibility of making a record. *See Goffney,* 843 S.W.2d at 585. The record must reflect that the defendant was fully admonished. *See Collier,* 959 S.W.2d at 626 n. 8; *Goffney,* 843 S.W.2d at 585. The record must be sufficient for a reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of self-representation. *See Goffney,* 843 S.W.2d at 585; *Johnson,* 760 S.W.2d at 279.

The majority argues appellant's waiver can be inferred because he validly asserted his right to self-representation. I disagree. The right to be represented by counsel and the right to self-representation are recognized as separate and distinct. *See Faretta,* 422 U.S. at 819–20, 95 S.Ct. at 2533; *see also Lambrecht v. State,* 681 S.W.2d 614, 615 n. 2 (Tex.Crim.App.1984). It is a principal difference between the right to counsel and the right to self-

representation that the former is in effect until waived whereas the latter is not in effect unless asserted. *See Oliver v. State,* 872 S.W.2d 713, 715 n. * (Tex.Crim.App. 1994); *see also Burgess,* 816 S.W.2d at 428; *Scarbrough v. State,* 777 S.W.2d 83, 92–93 (Tex.Crim.App.1989). Consequently, a valid assertion of the right to self-representation can imply a waiver of the right to counsel in the absence of a written waiver. *See Burgess,* 816 S.W.2d at 430. Nevertheless, as a prerequisite to validly asserting the right to self-representation, the defendant must first be made aware of the dangers and disadvantages of self-representation. *See id.* at 428; *see also Dunn v. State,* 819 S.W.2d 510, 522 (Tex.Crim. App.1991), *cert. denied,* 506 U.S. 834, 113 S.Ct. 105, 121 L.Ed.2d 63 (1992); *Scarbrough,* 777 S.W.2d at 92. While *Geeslin,* 600 S.W.2d at 313, requires the reviewing court to indulge in every reasonable presumption *against* the validity of a waiver, the majority presumes the admonishments given to appellant in an off-the-record hearing were proper. True, the trial judge's instructions to the jury during voir dire intimate to some degree what may have been said off the record between the trial judge and appellant; however, we cannot presume the full extent of those discussions or whether from those discussions appellant demonstrated an understanding of the dangers and disadvantages of self-representation. *See Goffney,* 843 S.W.2d at 585; *Geeslin,* 600 S.W.2d at 314.

Moreover, we cannot say that the judge's instructions to the jury during voir dire were, in and of themselves, sufficient to make appellant aware of the dangers of self-representation, even had they been given directly to appellant. Neither naked admonishments nor the defendant's bare assertion that he understands his rights are sufficient to pass constitutional muster under the Sixth Amendment. As the

Court of Criminal Appeals observed in *Blankenship:*

A judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right, does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, thereunder, possible defenses, to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which a plea is tendered.

673 S.W.2d at 583 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)); *see also Martin v. State,* 630 S.W.2d 952, 954 n. 5 (Tex. Crim.App.1982). Here, the judge's remarks touch on some of the dangers of self-representation, but they do not reflect an examination of all the circumstances so that we can assess appellant's awareness. *See Goffney,* 843 S.W.2d at 584–85; *George v. State,* 9 S.W.3d 234, 237 (Tex.App.— Texarkana 1999, no pet.).

Accordingly, on the record before us, I cannot conclude that appellant was adequately admonished of the dangers and disadvantages of self-representation. *See Goffney,* 843 S.W.2d at 585; *Geeslin,* 600 S.W.2d at 311; *see also Scarbrough,* 777 S.W.2d at 93; *compare Martin,* 630 S.W.2d at 954 n. 7 *with Williams v. State,* 925 S.W.2d 272, 275 (Tex.App.—Corpus Christi 1996, no pet.) *and Perales v. State,*

730 S.W.2d 205, 207 (Tex.App.—San Antonio 1987, no pet.). Because the record does not demonstrate that the trial court adequately admonished appellant of the dangers and disadvantages of self-representation, the trial court failed to satisfy the requirements of *Faretta.*

Next is the question of harm. In *Goffney,* without conducting a harm analysis, the court of criminal appeals held that failure of the record to reflect that the defendant was properly admonished of the dangers and disadvantages of self-representation warranted reversal under *Faretta. See Goffney,* 843 S.W.2d at 585. However, subsequent to *Goffney,* the court issued a broad mandate in *Cain v. State,* holding that "[e]xcept for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error ... is categorically immune to a harmless error analysis." 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

"Structural" error, as explained by the Supreme Court, is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). The Supreme Court has found structural error where the defendant has been denied the right to self-representation at trial and where the defendant was totally deprived of the right of counsel at trial. *Accord McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984); *Gideon v. Wainwright,* 372 U.S. 335, 344–45, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963). However, the Supreme Court has never labeled error under the circumstances of this case as structural. *See Johnson v. United States,* 520 U.S. 461, 468–69, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). Therefore, we are obligated to determine whether, under this appellate record, a meaningful harm analy-

sis can be conducted. Tex.R.App. P. 44.2(a).

The right to be represented by counsel is fundamental under the Sixth Amendment. *See Johnson v. Zerbst*, 304 U.S. 458, 463–64, 58 S.Ct. 1019, 1022–23, 82 L.Ed. 1461 (1938). Because the error is constitutional, we should apply rule 44.2(a). Tex.R.App. P. 44.2(a). As noted above, lacking a record of the warnings given by the trial judge to appellant concerning the dangers and disadvantages of self-representation, I believe we are required to find trial error. The question is whether the trial court's error, trying appellant without counsel, was harmless beyond a reasonable doubt. *Cf. Williams v. State*, 958 S.W.2d 186, 194 (Tex.Crim.App.1997).

In *Gideon*, the Supreme Court observed:

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skills and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Gideon*, 372 U.S. at 344–45, 83 S.Ct. at 797 (quoting *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932));

*Zerbst*, 304 U.S. at 463, 58 S.Ct. at 1022–23.

I can conceive of no practical difference in the disadvantages suffered between the defendant who has proceeded to trial without the benefit of counsel he never intelligently waived, and where the court has failed to appoint counsel to an indigent defendant as in *Gideon*. In the context of a lay defendant (albeit, here a professional, degreed one), a meaningful harm analysis of this error presents a virtually impossible task for the reviewing court. A sister court of appeals recently ruled in *Manley v. State*, 23 S.W.3d 172, 175 (Tex.App.— Waco 2000, pet. ref'd) that this error is "categorically immune" from harmless error analysis. Because I can conceive of circumstances under which a harmless error analysis *could* be conducted (for example, where the defendant was a licensed lawyer experienced in criminal law) I do not agree that the error is categorically immune from harm analysis; however, I do agree that in *most* cases, no meaningful harmless error analysis is possible for this specific constitutional error.

In *Cain* the Court of Criminal Appeals recognized that there are certain types of error that may, under the facts of the case, defy meaningful harmless error analysis. 947 S.W.2d at 264. I believe the circumstances of the instant case call for that conclusion. This same rationale seems implicit in *Goffney* a pre-*Cain* decision in which the Court of Criminal Appeals, faced with a similar example of this trial error, affirmed the court of appeals' decision reversing and remanding the defendant's DWI conviction for new trial, without conducting a harm analysis. 843 S.W.2d at 585. Accordingly, lacking the ability, under this record, to perform a meaningful harmless error analysis, I respectfully dis-

sent to the majority's decision overruling appellant's second point.