**Richard BAGGETT III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–02–01100–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 10, 2003.

Patricia Sedita, Houston, for appellants.

Peyton Peebles III, Houston, for appellees.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

### OPINION

JOHN S. ANDERSON, Justice.

After a jury trial in which appellant was convicted for the felony offense of aggravated sexual assault, appellant Richard Baggett, III, filed a motion for post-conviction DNA testing under Chapter 64 of the

Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC.CODE ANN. art. 64.01 (Vernon Supp.2002). The trial court granted appellant's request; however, the test results were "inconclusive." Based on this outcome, the trial court signed findings of fact and conclusions of law that determined the DNA test results were "not favorable" to appellant. *See id.* at art. 64.04. In one point of error, appellant challenges that finding. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

A jury found appellant guilty of sexual assault of a former girlfriend, D.F. Evidence at trial showed appellant persuaded D.F. to go on a "reconciliation" date on March 12, 1988, after months of discord. During the date, appellant got upset, abandoned D.F., and told her "you're dead tonight, bitch." Appellant later returned, apologized, and escorted D.F. home.

According to D.F.'s testimony at trial, after appellant escorted D.F. home, he told D.F. he would "show" her why he had said she would be dead that evening. He beat her with his fists until she passed out. She awoke to find her blouse had been removed and that appellant was stabbing her. She passed out a second time.

D.F. testified that when she awoke, she was in a park with appellant ordering her to lie down. Appellant then allegedly raped her while holding a cocked handgun to her head. Following this attack, appellant took D.F. to a hospital where she received treatment for 47 stab wounds. A bloody blouse and bra, as well as a gun, were found inside appellant's car.

Charged with aggravated sexual assault, appellant was found guilty by a jury and punishment was assessed by the trial court at 50 years in the Texas Department of Criminal Justice Institutional Division. On October 19, 1989, this court affirmed appellant's direct appeal. *See Baggett v. State,* No. C14-89-00165-CR, 1989 WL 122450 (Tex.App.-Houston [14th Dist.] Oct. 19, 1989, no pet.) (not designated for publication).

In 2002, appellant filed a motion for post-conviction DNA testing of a vaginal smear taken from D.F. *See* TEX.CODE CRIM. PROC.CODE ANN. art. 64.01 (Vernon Supp. 2002). Although the trial court granted appellant's motion, test results from the smear detected only an "inconclusive male pattern." Based on this outcome, the trial court made a finding that the test results were "not favorable" to appellant and denied appellant further relief under Chapter 64. *See id.* at art. 64.04. Appellant takes this appeal from that finding.

## DISCUSSION

In his sole point of error, appellant complains that the trial court erred in finding appellant's DNA test results were "not favorable." Because appellant's identity was at issue, he argues, "inconclusive" DNA results constitute exculpatory evidence that helps prove his innocence; therefore, the trial court should have found the results to be "favorable." We disagree.

### Standard of Review

Although a standard of review has not yet been identified for challenges to a trial court's finding under article 64.04 of the Texas Code of Criminal Procedure, a standard of review *has* been established for trial court decisions regarding DNA testing under article 64.03. *See* TEX.CODE CRIM. PROC.CODE ANN. art. 64.03(a)(2)(A) (Vernon Supp.2002). The pertinent language of article 64.04 is almost identical to the language provided in article 64.03; thus, we apply this standard.

Appellate courts have reviewed a trial court's decision to deny DNA testing under article 64.03 using the bifurcated *Guzman* standard: (1) almost total deference is afforded to the trial court's determination of historical fact issues and the application-of-law-to-fact issues that turn on credibility or demeanor, while (2) the court reviews *de novo* other application-of-law-to-fact issues. *Rivera v. State,* 89 S.W.3d 55, 59 (Tex.Crim.App.2002), *citing Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997). "Although there may be subsidiary fact issues that are reviewed deferentially, the ultimate question of whether a reasonable probability exists that exculpatory DNA tests would prove innocence is an application of law to fact question that does not turn on credibility and demeanor and is therefore reviewed *de novo.*" *Rivera,* 89 S.W.3d at 59.

### Article 64.04

If a trial court orders post-conviction DNA testing under the Texas Code of Criminal Procedure, it has an obligation to determine whether the results obtained are "favorable to the convicted person." TEX.CODE CRIM. PROC. ANN. art. 64.04 (Vernon Supp.2002). Results are "favorable" if, had the results been available before or during the trial of the offense, it is "reasonably probable that the person would not have been prosecuted or convicted." *Id.* Although the phrase, "reasonably probable that the person would not have been prosecuted or convicted," has not yet been construed as it pertains to article 64.04, it has been construed as it pertains to article 64.03. *See* TEX.CODE CRIM. PROC.CODE ANN. art. 64.03(a)(2)(A); *Kutzner v. State,* 75 S.W.3d 427, 439 (Tex.Crim.App.2002).

In interpreting article 64.03, courts have held the requirement that appellant establish by a preponderance of the evidence that a "reasonable probability exists that [appellant] would not have been prosecuted or convicted" to mean an appellant must show a reasonable probability that exculpatory DNA tests would "prove [his] innocence." *Id.* at 438–39; *Rivera,* 89 S.W.3d at 59. *See also Torres v. State,* 104 S.W.3d 638, 639 (Tex.App.-Houston [1st Dist.] 2003, no pet. h.); *Thompson v. State,* 95 S.W.3d 469, 472 (Tex.App.-Houston [1st Dist.] 2002, pet. filed). *See also Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995) (to show innocence, an appellant must show "it is more likely than not that no reasonable juror" would have convicted appellant in light of the new evidence).

A "reasonable probability" of innocence exists when there is a "probability sufficient to undermine confidence in the outcome." *Strickland,* 104 S.Ct. at 2068; *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). A "reasonable probability" of innocence does not exist if there is sufficient evidence, other than the evidence in question, to establish guilt. *Rivera,* 89 S.W.3d at 60 (no reasonable probability of innocence where absence of victim's DNA under appellant's fingernails was outweighed by appellant's confession; "[w]hile the presence of ... DNA ... could indicate guilt, the absence ... would not indicate innocence"); *Thompson,* 95 S.W.3d 469, 472 (Tex.App.-Houston [1st Dist.] 2002, pet. filed) (no reasonable probability of innocence where weapon failed to contain complainant's blood because such evidence could be outweighed by other competent evidence).

Thus, a trial court does not err by finding DNA test results "not favorable" if the post-conviction results fail to demonstrate a reasonable probability of innocence and there was sufficient evidence, other than the evidence in question, to establish guilt.

## Analysis

■ Appellant's post-conviction DNA test was conducted on a vaginal smear taken from complainant after her assault. The test detected an "inconclusive male pattern." We find that such a result does not establish a reasonable probability of innocence. *See e.g., Kutzner,* 75 S.W.3d at 439 (no reasonable probability of innocence where test results "merely muddy the waters"); *Ex parte McGinn,* 54 S.W.3d 324, 325 (Tex.Crim.App.2000)(J. McCormick, concurring) (inconclusive DNA analysis of pubic hair and semen establishes only that appellant is "not excluded as a possible donor"); *Rivera,* 89 S.W.3d at 56 (no reasonable probability of innocence where there is an absence of DNA under an appellant's fingernails and a negative result from a victim's rape kit).[1]

First, it is arguable that appellant's "inconclusive" results would not have been admissible at trial. *See e.g., State v. Woodall,* 182 W.Va. 15, 385 S.E.2d 253, 260 (1989) (finding inconclusive DNA results inadmissible at trial because, when "no print was obtained, any claim that the test tends to exculpate the defendant would only confuse the jury"). *See also Schlup,* 513 U.S. at 323, 115 S.Ct. at 865 (a claim of actual innocence requires "new reliable evidence—whether it be *exculpatory* scientific evidence, *trustworthy* eyewitness accounts, or *critical* physical evidence") (emphasis added). Only "relevant" evidence is admissible at trial. Tex.R. Evid. 402 (Vernon Supp.2002). "Relevant evidence" is defined as evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* at 401. Here, the evidence is "inconclusive"; thus, it does not make "more or less probable" the fact that appellant was the source of male pattern DNA found in D.F.

Next, appellant's identity was not at issue at trial. Although appellant now *claims* his identity was at issue,[2] he actually admitted during trial that he was with D.F. the night in question and that he believed he stabbed D.F. during the time

---

1. *See also Murry v. State,* 2000 WL 218097, at *3 (Tex.App.-Dallas 2000, pet. ref'd) (not designated for publication) ("Whether the inconclusive probes [of a proffered DNA analysis] would have cleared appellant or further reinforced the DNA match is unknowable and mere speculation."); *Rogers v. State,* 1999 WL 93274, at *1 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (not designated for publication) (finding that where DNA test showed "no result" or was "inconclusive," evidence "[did] not conclusively establish appellant as the killer," but rather only was "consistent with his being the killer").

Courts in other jurisdictions have come to similar conclusions. *See Satcher v. Pruett,* 126 F.3d 561, 571 (4th Cir.1997) (finding denial of appellant's actual innocence claims appropriate where DNA evidence was inconclusive and did not show someone else to be the source of the DNA sample taken from the crime scene); *O'Dell v. Netherland,* 95 F.3d 1214, 1246–53 (4th Cir.1996) (rejecting appel-

lant's actual innocence claim based on new DNA evidence arguably showing state's test to be inconclusive); *State v. Jennings,* 232 Wis.2d 556, 608 N.W.2d 436 (1999) (not designated for publication) (finding inconclusive DNA results "did not exclude or include" appellant as the perpetrator, thus, appellant was not exculpated); *but cf. Com. v. Hawk,* 551 Pa. 71, 709 A.2d 373 (1998) (holding that, where rape kit showed lack of presence of semen and pubic hair on victim, inconclusive evidence was relevant to issue of whether sexual intercourse had occurred and therefore should have been admitted at trial).

2. In his brief, appellant states he filed an affidavit with his original motion asking for post-conviction DNA testing, alleging that his identity was an issue at trial. That position was re-asserted by counsel in appellant's subsequently-filed motion. Because the record does not contain a copy of either the original motion or the attached affidavit, we are unable to confirm this assertion.

he was with her. What he has denied doing is *sexually assaulting* her.

The issue at trial, therefore, was not whether appellant was the *perpetrator* of the crimes committed against D.F., but rather whether the crimes he perpetrated included *rape*.[3]

The evidence strongly supports a conclusion that there *was* a sexual assault. Indeed, in addition to D.F.'s first-hand testimony that appellant raped her, there was *appellant's* own testimony that he was at the scene, that he physically fought with D.F., and that, although he "did not remember stabbing" D.F., he assumed he stabbed her. Additionally, there was evidence showing semen was present inside D.F.'s vaginal vault, articles of clothing were removed from D.F.'s body, and appellant possessed a gun that corroborated D.F.'s rape scenario.[4] From this evidence, a rational jury could conclude appellant raped D.F. and either lied about it, or did not remember doing it.

Because there was sufficient evidence other than the DNA evidence in question to establish appellant's guilt, we cannot conclude there was a "reasonable probability" of his innocence. *See Rivera,* 89 S.W.3d at 60 (no reasonable probability of innocence where appellant's confession outweighed the absence of victim's DNA under appellant's fingernails). Indeed, even if appellant's "inconclusive" DNA results had been found to supply an exculpatory inference of no sexual assault, such an inference would not have outweighed the other evidence of appellant's guilt. *See Thompson,* 95 S.W.3d at 472 ("even if DNA testing proved ... the box cutter did not contain complainant's blood or any blood at all, it would not prove appellant's innocence [because it] ... would not conclusively outweigh ... other evidence of appellant's guilt").

Because we cannot conclude there was a "reasonable probability" that appellant was innocent of the sexual assault of D.F., we find the trial court did not err when it made its finding that the results were "not favorable" to appellant. Accordingly, we overrule appellant's sole point of error and affirm the trial court's judgment.

---

3. The reason would appear to be related to punishment. While the punishment for aggravated sexual assault—a first degree felony—includes five to 99 years of confinement, the punishment for aggravated assault, sexual assault, and attempted murder—all second degree felonies—includes imprisonment of only two to 20 years. *See* TEX PEN.CODE ANN. §§ 12.32, 12.33, 22.011, 22.02, and 15.01(d) (Vernon 1994).

4. When the trial court ruled on the results of appellant's post-conviction DNA testing, it enumerated these facts in its findings of fact numbered 2, 4, 5 and 7. Appellant has not challenged these findings; indeed, he states "[t]he facts necessary to rule in this case are limited to those contained in the Findings of Fact signed by the judge." Thus, these findings carry the same weight as a jury finding. *See One 1984 Ford v. State,* 698 S.W.2d 279, 284 (Tex.App.-Fort Worth 1985, no pet.) (findings of fact entered in a case tried to the court are of the same force and dignity as jury's verdict upon special issues).