NO. 07-03-0368-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 20, 2004

_____

LEOPOLDO FUENTES,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 9124; HON. TOM NEELY, PRESIDING

_____

*Opinion*

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Appellant Leopoldo Fuentes appeals from an order of the trial court finding that the results of post-conviction DNA testing were unfavorable to him. The finding was allegedly erroneous because the test "establish[ed] a second party involvement in the . . . sexual assault" for which he was convicted. We affirm the order.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

### Background

Appellant was convicted in 1994 of aggravated sexual assault. On March 25, 2002, he filed a motion seeking DNA testing and appointment of counsel. The trial court thereafter appointed counsel and set the matter for hearing. A hearing was conducted on April 16, 2003, which appellant attended. At that hearing, the State agreed that DNA testing should take place. The court granted the motion, and the testing was conducted. On June 16, 2003, a hearing was held on the results of the testing, during which the trial court found that the report was unfavorable to appellant.

### Trial Court's Finding

In his sole issue, appellant contends that the trial court erred in its finding that the DNA testing results were unfavorable to him. At the time of the hearing on this matter, article 64.04 of the Code of Criminal Procedure provided that after examining the test results, "the convicting court shall hold a hearing and make a finding as to whether the results are favorable to the convicted person." TEX. CODE CRIM. PROC. ANN. art. 64.04 (Vernon Supp. 2003). Such results are favorable "if, had the results been available before or during the trial of the offense, it is reasonably probable that the person would not have been prosecuted or convicted." *Id.* This language is similar to that formerly used in article 64.03 of the same code. There, the trial court was required to find before ordering DNA testing that "a reasonable probability exists that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing . . . ." TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A) (Vernon Supp. 2003). Furthermore, to satisfy that threshold, it had to be shown that a reasonable probability

2

existed that exculpatory DNA tests would prove the defendant's innocence. *Rivera v. State,* 89 S.W.3d 55, 59 (Tex. Crim. App. 2002); *Kutzner v. State,* 75 S.W.3d 427, 438-39 (Tex. Crim. App. 2002). And, that occurs when there is a probability sufficient to undermine confidence in the outcome. *Baggett v. State,* 110 S.W.3d 704, 706 (Tex. App. --Houston [14th Dist.] 2003, pet. ref'd).

So, we resolve appellant's attack upon the trial court's finding at bar by assessing whether the DNA tests which were undertaken create a probability of innocence sufficient to undermine the confidence in the outcome of the trial. And, we not only treat that matter as a question of law but also resolve it *de novo*. *See Rivera v. State,* 89 S.W.3d at 59 (stating that generally the question of whether a reasonable probability exists that DNA tests would prove innocence is an application of the law that does not turn on credibility or demeanor of a witness)*.*

Here, the post conviction test revealed the DNA profile from the "sperm fraction of the semen on the [victim's] panties [to be] consistent with a mixture of [appellant] and [the victim]." And, though there were additional findings that another potential contributor to the sperm fraction existed, appellant nonetheless could not be excluded "as the contributor of the major component of the semen on the panties." Further, the probability that someone other than appellant contributed the major component of semen was "approximately 1 in 8.913 trillion for Caucasians, 1 in 73.05 trillion for Blacks, [and] 1 in 466.2 billion for Hispanics." The approximate population of the world, according to the test report, was only 6.3 billion. Given that appellant's semen was found in the victim's panties and that the odds of someone other than appellant being the major contributor of that semen exceeded

3

the world population, we cannot say that the test created a probability of innocence sufficient to undermine confidence in the outcome of the trial.

Accordingly, the order of the trial court is affirmed.

Brian Quinn
Justice

Publish.