Tracy HICKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–03–00083–CR.

Court of Appeals of Texas, Waco.

Oct. 27, 2004.

*id.* §§ 55.002(c), 55.004(g)(2) (Vernon Supp. 2004–2005). Yet the Legislature has not put such a limitation on general hospital liens.

Tracy Hicks, Iowa Park, pro se.

Dale S. Hanna, Johnson County Dist. Atty., David W. Vernon, Johnson County Asst. Dist. Atty., Cleburne, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

In 1993, Tracy Hicks pleaded guilty to three counts of sexual assault and true to an enhancement allegation paragraph. As a result, he was sentenced to forty years' incarceration. In 2001, Hicks filed a motion for post-conviction DNA testing. The trial court granted Hicks's motion and ordered the testing. After the testing was completed, the trial court found that the DNA results were unfavorable to Hicks. Hicks appeals from this ruling. We affirm.

## ISSUES RELATING TO HICKS'S 1993 CONVICTION

Hicks's first and second issues and his fourth through seventh issues directly attack his 1993 conviction. At the time that Hicks filed his DNA motion, this Court's jurisdiction was confined to appeals of "findings" under articles 64.03 and 64.04 regarding post-conviction DNA hearings.[1] *See Wolfe v. State*, 120 S.W.3d 368, 372 (Tex.Crim.App.2003); Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2 § 2, 2001 TEX. GEN. LAWS 2, 4 (amended 2003) (current version at TEX.CODE CRIM. PROC. ANN. art. 64.05 (Vernon Supp.2004)). The jurisdiction granted under chapter 64 does not extend to collateral attacks on the judgment of conviction. *Lopez v. State*, 114 S.W.3d 711, 714–15 (Tex.App.-Corpus

Christi 2003, no pet.). Hicks's issues relating to the 1993 conviction do not arise from a chapter 64 proceeding, and as a result, we do not have jurisdiction over them. *Id.* Therefore, we dismiss Hicks's first and second issues and his fourth through seventh issues for want of jurisdiction. *See Gray v. State*, 134 S.W.3d 471, 472 (Tex.App.-Waco 2004, no pet.).

## *FARETTA* HEARING

Hicks argues in his eighth issue that the trial court erred in failing to hold a *Faretta* hearing before allowing him to represent himself.[2] Counsel was appointed to represent Hicks during the post-conviction DNA hearing. After the hearing, the court allowed counsel to withdraw and appointed new counsel for this appeal. Hicks became dissatisfied with his appellate counsel and filed a motion with this Court to proceed *pro se* and a motion with the trial court to allow his appellate counsel to withdraw. Hicks also sent letters to his appellate counsel asking him to withdraw. Without conducting a hearing, the trial court allowed counsel to withdraw, and Hicks was permitted to represent himself.

Hicks's motions and letters indicate that he understands the dangers and disadvantages of self-representation. A defendant's right to self-representation "cannot be manipulated in such a manner as to throw the trial process into disarray." *Fulbright v. State*, 41 S.W.3d 228, 235

---

1. In 2003, the Legislature changed the law to allow an appeal under chapter 64 in its entirety. TEX CODE CRIM. PROC. art. 64.05 (Vernon Supp.2004). The current law applies to appellants who submit a motion for DNA testing on or after September 1, 2003. Hicks submitted his motion in 2001. Therefore, the former law applies to Hicks's case. *See Wolfe v. State*, 120 S.W.3d 368, 370–72 (Tex.Crim.App. 2003).

2. When a defendant wishes to represent himself, a *Faretta* hearing is required to advise him of the dangers and disadvantages of self-representation. *See Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975); *see also* TEX.CODE CRIM. PROC. ANN. 1.051(g) (Vernon Supp.2004).

(Tex.App.-Fort Worth 2001, pet. ref'd) (citing *Dunn v. State*, 819 S.W.2d 510, 520 (Tex.Crim.App.1991)).

Hicks indicates in his motions that he intended to represent himself regardless of whether the trial court allowed his appellate counsel to withdraw. Hicks claimed that his appellate counsel would not present certain issues to this Court that Hicks felt was relevant to his conviction. Because of this Hicks felt that it would be in his best interest and in the best interest of the State that he represent himself. In addition, because of the conclusiveness of the DNA evidence and the restriction of this appeal to chapter 64, the outcome of this proceeding would be no different had Hicks chosen not to represent himself. Therefore, any error in the trial court's failure to hold a hearing is harmless. *See* TEX.R.APP. P. 44.2; *Fulbright*, 41 S.W.3d at 235–36. Accordingly, we overrule Hicks's eighth issue.

## POST–CONVICTION DNA REVIEW

Hicks argues in his third issue that a proper chain of custody was not established for the evidence tested and that the test results do not support the trial court's finding that the DNA results was unfavorable.

### Chain of Custody

■ Hicks argues that the evidence of the DNA results should not have been admitted because a proper chain of custody was not established. In his motion to the trial court requesting DNA testing, Hicks asked the court to find that the DNA evidence had been properly collected and remained in proper custody. As a result, the trial court found there was a

proper chain of custody and ordered the tests.

■ Because Hicks requested that the trial court find a proper chain of custody, and the court did so, he is estopped from complaining about it. The law of invited error estops an appellant from complaining of error that he induced. *Jones v. State*, 119 S.W.3d 766, 784 (Tex.Crim.App.2003) (citing *Benson v. State*, 496 S.W.2d 68, 70 (Tex.Crim.App.1973)). Hicks cannot now complain that the trial court granted his request.

### Unfavorable DNA Evidence

■ Hicks argues that the test results do not support the trial court's finding under article 64.04 that the results were unfavorable. Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2 § 2, 2001 TEX. GEN. LAWS 4 (amended 2003) (current version at TEX. CODE CRIM. PROC. art. 64.04 (Vernon Supp. 2004)). Because the language of article 64.03 is similar to that of article 64.04, appellate courts have applied the article 64.03 standard of review when analyzing article 64.04 appeals.[3] *Fuentes v. State*, 128 S.W.3d 786, 787 (Tex.App.-Amarillo 2004, pet. ref'd). Therefore, we review *de novo* the ultimate question of whether a reasonable probability exists that DNA results are favorable, *i.e.* if it is reasonably probable that, had the DNA results been available before or during trial, appellant would not have been prosecuted or convicted. *Id.* (citing *Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim.App.2002)).

■ Courts have found the requirement in article 64.03 that the appellant establish by a preponderance of the evidence that a "reasonable probability exists

**3.** We apply the standard of review as interpreted by the courts under former chapter 64, as explained above; yet, we note that the Legislature has changed the standard of review for appeals filed under articles 64.03 and 64.04. *See* TEX.CODE CRIM. PROC. arts. 64.03, 64.04 (Vernon Supp.2004).

that [he] would not have been prosecuted or convicted" to mean that an appellant must show a reasonable probability that exculpatory DNA tests would prove his innocence. *Kutzner v. State,* 75 S.W.3d 427, 438–39 (Tex.Crim.App.2002); *see also* Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2 § 2, 2001 TEX. GEN. LAWS 3 (amended 2003) (current version at TEX.CODE CRIM. PROC. art. 64.03 (Vernon Supp.2004)). This is accomplished by showing that there is a probability of innocence sufficient to undermine confidence in the outcome. *Baggett v. State,* 110 S.W.3d 704, 706 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd) (citing *Kutzner,* 75 S.W.3d at 438–39). Therefore, we must review *de novo* whether the DNA results create a probability of innocence sufficient to undermine our confidence in the outcome of Hicks's 1993 trial. *Fuentes,* 128 S.W.3d at 787; *Baggett,* 110 S.W.3d at 706.

The test results show that the DNA of Hicks was "consistent" with the DNA taken from the semen present on the vaginal swab of the victim. The probability that Hicks was not the source of the DNA was 1 in 37.04 quintillion for Caucasians, 1 in 12.8 quintillion for African Americans, and 1 in 11.2 quintillion for Hispanics. Because the odds that Hicks was not the contributor of the DNA exceeds the world's population, we find that these results do not create a probability of innocence sufficient to undermine our confidence in Hicks's conviction. *Fuentes,* 128 S.W.3d at 788. Accordingly, we overrule Hicks's third issue.

## CONCLUSION

Having dismissed or overruled all of Hicks's issues, we affirm the judgment of the trial court.