ACCEPTED
03-14-00512-CR
8281863
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/17/2015 11:37:06 AM
JEFFREY D. KYLE
CLERK

**No. 03-14-00512-CR**

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/17/2015 11:37:06 AM
JEFFREY D. KYLE
Clerk

# CRAE ROBERT PEASE,

*Appellant,*

**v.**

# THE STATE OF TEXAS,

*Appellee.*

On appeal from the County Court-at-Law Number Six,
Travis County, Texas
Trial Cause No. C-1-CR-13-220763

# STATE'S BRIEF

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

GISELLE HORTON
ASSISTANT TRAVIS COUNTY ATTORNEY
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512)854-9415
TCAppellate@traviscountytx.gov

*December 17, 2015*     ATTORNEYS FOR THE STATE OF TEXAS

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE STATE'S ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT

    *Reply Point One (in response to Issues One and Ten)*: The trial
    court did not err in denying Pease assistance of standby
    counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        Judge Perkins did not err in failing to admonish
        Pease after denying standby counsel, because Pease
        had been given a *Faretta* hearing months earlier.. . . . . . . . . . . . 7

        A signed written waiver was not necessary for
        Pease to invoke his right to self-representation.. . . . . . . . . . . . . 9

    *Reply Point Two (in response to Issue Two)*: The matter of the
    judicial oath is unpreserved. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    *Reply Point Three (in response to Issue Three)*: Pease waived
    review with regard to the matter of the prosecuting attorney's
    authority to prosecute the case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reply Point Four (in response to Issues Five and Six)*: If this point is preserved, the information was not defective.. . . . . . . . . . . . . . . . . . 13

Pease's contentions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pease failed to preserve error for review.. . . . . . . . . . . . . . . . . 14

Even if error had been preserved, the information charged an offense and was not defective.. . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Reply Point Five (in response to Issue Nine)*: The evidence is legally sufficient to show that Pease intentionally and knowingly entered on property of another.. . . . . . . . . . . . . . . . . . 16

*Reply Point Six (in response to Issue Eleven)*: The trial court did not err in denying Pease's requested mistake-of-fact instruction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Reply Point Seven* (*in response to Issues Four and Twelve*): The State never alleged that Waller was the owner of the property, and therefore was not required to prove that she was.. . . . . . . . . . . . . 21

*Reply Point Eight* (*in response to Issue Seven*): Nothing in the law requires the owner to appear in court, but Fannie Mae appeared through Waller.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Reply Point Nine* (*in response to Issue Eight*): Pease was inhabiting the house when the he received a criminal-trespass warning.. . . . . . . . . 22

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# INDEX OF AUTHORITIES

**Constitutional** **Page**

TEX. CONST. art. V § 12(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes**

TEX. CODE CRIM. P. art 1.051(g)
       (West Supp. 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. CODE CRIM. P. art. 1.14(b)
       (West 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. PENAL CODE 1.07(a)(35)(A)
       (West Supp. 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. PENAL CODE § 1.07(a)(39)
       (West Supp. 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. PENAL CODE § 8.02(a)
       (West 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TEX. PENAL CODE § 2.03(c)
       (West 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

TEX. PENAL CODE § 30.05 (a)
       (West Supp. 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

TEX. PENAL CODE § 30.05 (d)
       (West Supp. 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Rules**

TEX. R. APP. P. 33.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

**Cases**

*Burgess v. State*, 816 S.W.2d 424
       (Tex. Crim. App. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Bustillos v. State*, 832 S.W.2d 668
       (Tex. App.—El Paso 1992, pet. ref'd). . . . . . . . . . . . . . . . . . . . . 17

*Davis v. State*, 227 S.W.3d 766
(Tex, App.—Tyler 2005), *aff'd*, 227 S.W.3d 733
(Tex. Crim. App. 2007)............................................. 13

*Duron v. State*, 956 S.W.2d 547
(Tex. Crim. App. 1997)........................................ 14, 15

*Easton v. State*, No. 14-99-01145-CR, 2001 Tex. App. LEXIS 7179
(Tex. App.—Houston [14th Dist.] Oct. 25, 2001, pet. ref'd)
(mem. op., not designated for publication). .................... 10

*Faretta v. California*, 422 U.S. 806
(1974). ........................................................ 8

*Fulbright v. State*, 41 S.W.3d 228
(Tex. App.—Fort Worth 2001, pet. ref'd). ...................... 7

*Garza v. State*, 344 S.W.3d 409
(Tex. Crim. App. 2011)........................................ 21

*Jackson v. Virginia*, 443 U.S. 307
(1979). ....................................................... 18

*Landers v. State*, 550 S.W.2d 272
(Tex. Crim. App. 1977)......................................... 6

*McCoy v. State*, 977 S.W.2d 379
(Tex. Crim. App. 1998)........................................ 12

*Moreno v. State*, 721 S.W.2d 295
(Tex. Crim. App. 1986)........................................ 16

*Moses v. State*, 814 S.W.2d 437
(Tex. App.—Austin 1991, pet. ref'd). ......................... 19

*Robertson v. State*, 934 S.W.2d 861
(Tex. App.—Houston [14th Dist.] 1996, no pet.)................. 6

*Scarbrough v. State*, 777 S.W.2d 83
(Tex. Crim. App. 1989)....................................... 6, 7

*Shaw v. State*, 243 S.W.3d 647
(Tex. Crim. App. 2007)........................................ 20

*State v. Edmond*, 933 S.W.2d 120
(Tex. Crim. App. 1996)........................................ 15

*State v. Mays*, 967 S.W.2d 404
(Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Studer v. State,* 799 S.W.2d 263
(Tex. Crim. App. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Teal v. State,* 230 S.W.3d 172
(Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Thomas v. State*, 855 S.W.2d 212
(Tex. App.—Corpus Christi 1993, no pet.). . . . . . . . . . . . . . . . . . . 20

*Wills v. State*, 790 S.W.2d 307
(Tex. Crim. App. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATEMENT OF THE CASE

Crae Robert Pease was charged by information with the Class A misdemeanor of criminal trespass,[1] alleged to have been committed on December 11, 2013. CR 12, 415 [State's motion to amend the information]. After being admonished about the dangers and disadvantages of self-representation, Pease waived counsel and proceeded *pro se*. CR 14, 15. On August 13, 2014, a jury found him guilty of the offense and assessed punishment at six months' confinement in jail and a $2,000 fine. CR 441, 444. The trial court sentenced Pease in accordance with these verdicts on August 13, 2014. CR 448–49. Pease gave notice of appeal on the day he was sentenced. CR 451.

## ISSUES PRESENTED

*Point One (Issues One and Ten)***:** Pease waived assistance of counsel, asserted the right to counsel to represent himself, and then requested standby counsel. Did the trial court erroneously deny Pease standby counsel?

---

[1] A person commits an offense if the person enters or remains on or in property of another without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so. An offense under this section is a Class A misdemeanor. TEX. PENAL CODE § 30.05 (a), (d) (West Supp. 2015).

1

Did the trial court erroneously fail to admonish Pease as to the dangers and disadvantages of representing himself?

Finally, was Pease's waiver of counsel insufficient because he filled in "Nein danke" on the line where his signature should have appeared?

***Point Two (Issue Two)***: Was the visiting judge without authority to preside over trial because his oath does not appear among the papers of the case?

***Point Three (Issue Three)***: Pease posits that an irregularity exists in the Travis County Attorney's bond. Did the assistant county attorney who prosecuted this case lack authority to act on behalf of the State of Texas because of the alleged irregularity?

***Point Four (Issues Five and Six)***: The information tracked the language of the statute regarding criminal trespass. Was the information sufficient to charge an offense when it failed to include the specific section of the penal code, and did not explain who Hallie Waller is or who the title owner of the residence was?

***Points Five and Six (Issues Nine and Eleven)***: Pease has continuously asserted a belief that he is the rightful owner of 10820 Gerald Allen Loop. Because of this belief (1) was the evidence legally insufficient to show that he intentionally and knowingly entered onto property of another; and (2) was he entitled to a mistake-of-fact instruction in the jury charge?

***Point Seven (Issues Four and Twelve)***: Pease contends that Waller was not the owner of the property, and that the State never met its burden of proof that she was. Did the State need to prove that Waller was the property's owner?

***Point Eight (Issue Seven)***: "If Fannie Mae was the owner of the property at the time of the intrusion, why didn't it appear for trial?"

2

*Point Nine (Issue Eight):* "Who was the inhabitant of the property when Appellant got the criminal trespass warning?"

## BACKGROUND

January 2007: Christian and Jessica Anderson take out a mortgage to purchase the residential property located at 10820 Gerald Allen Loop, in Austin, Texas. 5 RR State's Exhibit # 10.

Dec. 2, 2010: The Andersons execute a quitclaim deed to Trevarthen. 5 RR State's Exhibit # 10.

Dec. 6, 2010: The Andersons revoke the quitclaim deed. 5 RR State's Exhibit # 10.

Dec. 7, 2010: The home is foreclosed upon. The Federal National Mortgage Association ("Fannie Mae") becomes the new owner after purchasing the home at the foreclosure sale. *See* 5 RR State's Exhibits # 9, 13.

Dec. 14, 2010: Fannie Mae signs a master listing agreement with Hallie Waller, a licensed realtor in Texas. 3 RR 69–70; CR 506–37. A week after the foreclosure sale, Fannie Mae authorizes Waller to "[r]ekey immediately if vacant," maintain the property, and "[a]ct as [Fannie Mae's] representative when dealing with . . . any persons occupying the property." CR 540–41. While performing her duties, Waller found Pease living in the residence. 3 RR 76–77. Waller offered Pease assistance to move out, but he declined. 3 RR 77.

Jan. 3, 2011: Trevarthen executes a quitclaim deed to Crae Pease. 3 RR 167; 5 RR State's Exhibits # 10, 11.

3

Nov. 7, 2011:     Pease refuses to move out. Fannie Mae obtains a judgment for immediate possession after initiating a forcible detainer action in Justice of the Peace Court, Precinct Three, of Travis County.
5 RR State's Exhibit # 13.

Jan. 19, 2012:    After Pease appeals the FED judgment, County Court No. 1 issues a writ of possession to evict Jessica Anderson "and all occupants of 10820 Gerald Allen Loop, Austin, Texas 78748." 5 RR State's Exhibit # 3.

May 23, 2013:     Over a year later, the writ of possession is executed and the property is released to Fannie Mae. 5 RR State's Exhibit # 1, Defendant's Exhibit # 1. Hallie Waller, as Fannie Mae's representative, has the house's locks re-keyed. 3 RR 79, 81, 98.

May 31, 2013:     Hallie Waller gives Pease notice that entry onto and into 10820 Gerald Allen Loop is forbidden. 3 RR 81–82.

Dec. 11, 2013:    Pease is arrested for criminal trespass after police see him leaving through the front door of 10820 Gerald Allen Loop. 3 RR 38–39, 43–45, 58.

## SUMMARY OF THE STATE'S ARGUMENT

*Reply Point One (Issues One and Ten)*: The trial court properly denied Pease standby counsel, because neither the federal nor the state constitution grants a right to standby counsel. Afterwards, the court was not obligated to warn Pease of the dangers and disadvantages of representing himself. As Pease himself confirmed, he had already been warned of this at an earlier *Faretta* hearing. Further, Pease's coyly signing "Nein danke" on the written waiver of counsel has no effect on the

4

judgment because a written waiver is not necessary to establish that a defendant has invoked his right to self-representation.

**_Reply Point Two (Issue Two)_:** This point, which complains of a mere procedural irregularity, is unpreserved.

**_Reply Point Three (Issue Three)_:** Pease waived this point because he never objected that the county attorney's bond was not endorsed with an oath or dated after the election. Furthermore, he cites to no authority requiring this.

**_Reply Point Four (Issues Five and Six)_:** Pease has waived his fifth and sixth points because he failed to object to the information before the date on which trial on the merits began. The information, moreover, alleged all of the statutory elements of criminal trespass. The information was not required to allege facts that are merely evidentiary nature, such as an explanation of who Hallie Waller is or who the title owner of the residence was.

**_Reply Points Five and Six (Issues Nine and Eleven)_:** Viewing the evidence in the required light, any rational trier could have found beyond a reasonable doubt that Pease intentionally and knowingly entered on property of another.

Pease was not entitled to a jury-charge instruction on mistake of fact because of his belief that he was the lawful owner of the property. The defense of mistake of fact must negate the required culpability. That is, the evidence must have shown that Pease unintentionally or unknowingly entered onto the property after receiving notice that his entry was forbidden. Because no evidence establishes this, the trial court did not err in refusing the requested instruction.

*Reply Point Seven (Issues Four and Twelve)***:** Regardless of allegations of ownership, Waller had a superior right to the property, and was therefore capable of issuing a criminal trespass warning to Pease.

*Reply Point Eight (Issue Seven)***:** Governmental agencies can only appear through their agents. Waller, Fannie Mae's agent, appeared on its behalf.

*Reply Point Nine (Issue Eight)***:** Pease was inhabiting the property when he was given a criminal-trespass warning.

## ARGUMENT

*Reply Point One (in response to Issues One and Ten)***: The trial court did not err in denying Pease assistance of standby counsel.**

Pease's assertion that the Constitution guarantees him the "inviolate right to represent himself and have counsel during the criminal trial" ignores established case law. Pease's Brief, p. 10. A defendant who chooses to represent himself during trial has no right to standby or hybrid counsel. *Scarbrough v. State,* 777 S.W.2d 83, 93 (Tex. Crim. App. 1989); *Landers v. State,* 550 S.W.2d 272, 279 (Tex. Crim. App. 1977). The court in its discretion may allow a *pro se* criminal defendant to have standby counsel. *See Robertson v. State,* 934 S.W.2d 861, 864 (Tex. App.—Houston [14th Dist.]

6

1996, no pet.). But if the court denies standby counsel, it must inform the accused that "he must choose instead between two mutually exclusive rights: the right to self representation without standby counsel or representation by counsel. There is no 'middle ground.'" *Fulbright v. State*, 41 S.W.3d 228, 235 (Tex. App.—Fort Worth 2001, pet. ref'd); *see also Scarbrough*, 777 S.W.2d at 93.

Pease attempted to bring in Adam Reposa as standby counsel, but the court declined to appoint him as such. Judge Perkins then reminded Pease "you're entitled to represent yourself or you're entitled to have a lawyer represent you." 2 RR 21. Pease declined attorney representation. 2 RR 21. By restating his intention to represent himself, Pease waived his right to counsel. *See Fulbright*, 41 S.W.3d at 235.

**Judge Perkins did not err in failing to admonish Pease after denying standby counsel, because Pease had been given a *Faretta* hearing months earlier.**

Pease further contends that the court failed to fulfill its obligation to admonish him of the dangers of self-representation. Pease's Brief, p. 12. When a defendant wishes to waive representation by counsel, the court

7

must admonish him of the dangers of self-representation and then provide him with a formal statement to sign. TEX. CODE CRIM. P. art 1.051(g) (West Supp. 2015). This is usually done in a *Faretta* hearing, during which the court determines if the defendant fully understands his right to counsel, and makes him "aware of the dangers and disadvantages of self-representation." *Faretta v. California*, 422 U.S. 806, 835 (1974).

During the motion in limine hearing, Judge Perkins reminded Pease that, months earlier, another judge had held a *Faretta* hearing, after which Pease opted to represent himself: "You went through that whole hearing insisting that you did want to represent yourself. . . ." 2 RR 21. Pease confirmed that this was true: "Right." 2 RR 21. Pease has chosen not to include a transcription of this *Faretta* hearing in the appellate record. After learning he would not be appointed standby counsel, Pease still insisted on proceeding *pro se*, which is consistent with what he has done in past criminal cases. *See, e.g., Pease v. State*, No. 03-14-00512-CR, 2014 Tex. App. LEXIS 13613 (Tex. App.—Austin Dec. 19, 2014, no pet.) (mem. op., not designated for publication); *Pease v. State*, No. 03-06-00369-CR, 2007 Tex.

8

App. LEXIS 6351 (Tex. App.—Austin Aug. 9, 2007, no pet.) (mem. op., not

designated for publication).

**A signed written waiver was not necessary for Pease to invoke his right to self-representation.**

Finally, Pease argues that his waiver of counsel was insufficient.

Pease's Brief, p. 11. If it was, that was only because he refused to properly

sign it, thereby inviting the very "error" he complains of on appeal.

Furthermore, a written waiver is not mandatory. *Burgess v. State*, 816

S.W.2d 424, 430 (Tex. Crim. App. 1991). Neither the federal nor the state

constitution require that the waiver be in writing. *Id*. And, if Article

1.051(g) were construed as mandatory, "the statute would in fact operate to

impose counsel upon any defendant who refused to sign a written waiver,

even though he may otherwise have validly waived counsel and invoked

his *Faretta* right[.]" *Id*. In other words, making such written waivers

mandatory would impede a defendant's *Faretta* right. *Id*. at 431. Besides, by

the time a criminal defendant is asked to sign a waiver, the trial court has

9

already determined that the defendant has knowingly, voluntarily, and intelligently waived counsel. *Burgess*, 816 S.W.2d at 430–31.

Thus, although Pease signed his first waiver "Nein Danke" instead of signing his name, he was only offered that written form once the judge had determined that he understood the dangers and disadvantages of representing himself and yet still willingly invoked his *Faretta* rights. Because courts have held that the failure to secure a signed statement "will not provide grounds for reversal where the record is otherwise sufficient to demonstrate effective waiver of counsel[,]" Pease's refusal to sign his name on the document does not render his waiver invalid. *Easton v. State*, No. 14-99-01145-CR, 2001 Tex. App. LEXIS 7179, at *18 (Tex. App.—Houston [14th Dist.] Oct. 25, 2001, pet. ref'd) (mem. op., not designated for publication).

*Reply Point Two (in response to Issue Two)*: **The matter of the judicial oath is unpreserved.**

Pease's second point contends that Visiting Judge Bob Perkins's orders were void; he was without authority to preside over the case

10

because his oath of office does not appear in the record. Pease's Brief, pp. 13–14. Pease does not contend that Judge Perkins has not taken the oath.

Before jury selection began and after the trial court refused to appoint standby counsel, the following exchange took place regarding Judge Perkins's oath and assignment.

MR. PEASE: Then I would have to ask then to – because we mentioned the constitution. I believe I also have a constitutional right where everybody is sitting around like yourself has a proper oath and assignment. So I haven't had time to go to the courthouse over there to see about your assignment.

THE COURT: You'd have to go over to Judge Stubblefield. It's on file with Judge Stubblefield. He — because I'm a senior district judge, I have to file it with him.

MR. PEASE: All right.

THE COURT: He's the Administrative Judge of the Third Administrative Region.

MR. PEASE: Okay.

THE COURT: His office is in Georgetown.

MR. PEASE: I know where he is. Thank you.

THE COURT: Okay.

2 RR 22.

11

Pease's point regarding the judicial oath is not preserved, because Pease has never complained of the oath's absence from the court's file before now. TEX. R. APP. P. 33.1(a); *see McCoy v. State,* 977 S.W.2d 379, 380 (Tex. Crim. App. 1998) (a defendant may not complain of a procedural irregularity in the assignment of a visiting judge for the first time on appeal).

> *Reply Point Three (in response to Issue Three)*: **Pease waived review with regard to the matter of the prosecuting attorney's authority to prosecute the case.**

Point three contends that Travis County Attorney David Escamilla's bond is defective because an oath does not appear on the back of it, and it is not dated after the election. "If Escamilla has not completed the requisite documents prior to his assuming the office after each and every election, he does not have the authority of an officer of Travis County." Pease's Brief, p. 15. Pease concludes that the elected county attorney is without authority to appoint any assistants; assistant county attorney Bill Swaim therefore was not authorized to discharge the duties of prosecutor. Pease's Brief, p. 15.

Pease never objected on these grounds at any point before or during trial. Nor does he point to any authority under which a bond must be endorsed with an oath or dated after the election. This point is therefore waived. TEX. R. APP. P. 33.1(a); *see Davis v. State,* 227 S.W.3d 766, 770 (Tex, App.—Tyler 2005), *aff'd,* 227 S.W.3d 733 (Tex. Crim. App. 2007).

> *Reply Point Four (in response to Issues Five and Six)***: If this point is preserved, the information was not defective.**

**Pease's contentions**

Pease's fifth point contends that the information was defective because it

- failed to include the penal statute section;

- failed to state that Pease was being charged with criminal trespass or criminal trespass to a habitation; and it

- failed to explain who Hallie Waller is and who the residence's owner is.

Pease's Brief, pp. 20–22. The sixth point asks whether the jury charge tracked the information, but complains of the same things as the fifth point. Pease's Brief, pp. 23–26.

13

**Pease failed to preserve error for review.**

To complain on appeal of a defect, error, or irregularity of form or substance in an information, a criminal defendant must object before the date on which the trial on the merits commences. Otherwise, he waives and forfeits the right to object and may not raise the objection on appeal or in any other post-conviction proceeding. TEX. CODE CRIM. P. art. 1.14(b) (West 2005); *Studer v. State,* 799 S.W.2d 263 (Tex. Crim. App. 1990). Because Pease failed to object to the information before the date on which trial on the merits began, he has waived his fifth and sixth points. *Id.*

**Even if error had been preserved, the information charged an offense and was not defective.**

Since 1985, a charging instrument vests a court with jurisdiction if it charges a person with the commission of an offense. TEX. CONST. art. V § 12(b) (amended 1985); *Duron v. State,* 956 S.W.2d 547, 551 (Tex. Crim. App. 1997). The test for determining whether an indictment or information accomplishes this is whether it can be determined from the face of the instrument that it intends to charge a certain penal-code offense for which

14

the court has subject-matter jurisdiction. *Teal v. State,* 230 S.W.3d 172, 181 (Tex. Crim. App. 2007); *Duron,* 956 S.W.2d at 551. An information need only track the penal statute's language to meet statutory and constitutional notice requirements. *State v. Edmond,* 933 S.W.2d 120, 129–30 (Tex. Crim. App. 1996).

The amended information tracked the criminal-trespass statute, i.e., it alleged on its face all of the statutory elements. A person commits criminal trespass if he enters or remains on or in property of another, without effective consent, and the person had notice that entry was forbidden. TEX. PENAL CODE § 30.05 (a). The amended information alleged that Pease

> on or about December 11, 2013, did then and there intentionally and knowingly enter on the property of another, to wit: 10820 Gerald Allen Loop, Austin, Travis County, without the effective consent of another, to wit, Hallie Waller, and the Defendant did then and there have prior notice that entry there was forbidden.

CR 12, 415. Because of the substantial similarity between the information and the statute, a reasonable person could have identified the specific section of the penal code at issue. *See Duron,* 956 S.W.2d at 551.

Furthermore, the prosecution is under no obligation to allege facts that are merely evidentiary in nature, such as an explanation of who Hallie Waller is or who the title owner of the residence was. *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998); *Moreno v. State*, 721 S.W.2d 295, 300 (Tex. Crim. App. 1986).

> *Reply Point Five (in response to Issue Nine)*: **The evidence is legally sufficient to show that Pease intentionally and knowingly entered on property of another.**

Pease's ninth point contends that the State could not have proven that he intentionally and knowingly entered onto the property of another, because he "believed so strongly in his title." Pease's Brief, p. 30.

Fannie Mae acquired the property located at 10820 Gerald Allen Loop in a foreclosure sale in December of 2010. 3 RR 71–75; 5 RR State's Exhibits # 9, 13. In 2012, the property had been the subject of a forcible detainer action in which Pease appeared and claimed ownership of the property, but the county court rendered judgment in favor of Fannie Mae against all occupants, including Pease. 5 RR State's Exhibits #1, 3. About two and a half years after Fannie Mae bought the house, Pease was evicted

16

from it on May 23rd of 2013, and told not to return. 3 RR 27–28. Fannie Mae granted authority to realtor Hallie Waller to maintain the property and to act as Fannie Mae's representative when dealing with any individuals occupying the property. 5 RR State's Exhibit # 9. *See* TEX. PENAL CODE § 1.07(a)(39) (West Supp. 2015) (defining "possession" as "actual care, custody, control, or management."); *also, Bustillos v. State*, 832 S.W.2d 668, 672 (Tex. App.—El Paso 1992, pet. ref'd) (holding that the building manager had a greater right to possess the property than did the protestors at women's health clinic).

After Pease was evicted on the 23rd, Waller had the house re-keyed. 3 RR 27, 78–79. On the 25th, when crews went to clean the house, they could not get in because the locks had been changed. Waller re-keyed the house a second time. 3 RR 80. She filed a police report when, on the 26th, it was discovered that the locks had been changed yet again. 3 RR 81. On May 31st, Waller encountered Pease at the property, and gave him a criminal-trespass warning. 3 RR 81–82. Half a year later, Pease was still claiming that the property was his and was "continuing to show up on the

17

property." 3 RR 33. Neighbors reported people coming and going, and someone was re-keying the locks without authorization. 3 RR 34. Pease called Detective Evenson and told her that he would be moving back into the house on December 11th. 3 RR 151. Police went to the house to conduct surveillance. 3 RR 35. They saw Pease leave the house on December 11th, shut the door behind him, get in his car, and drive off. 3 RR 38–39, 43–45. Viewing this evidence in the light most favorable to the verdict, any rational trier could have found that Pease intentionally and knowingly entered on property of another, without Waller's effective consent, after being given notice that entry was forbidden. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

> ***Reply Point Six (in response to Issue Eleven):* The trial court did not err in denying Pease's requested mistake-of-fact instruction.**

Pease's eleventh point asserts that, because he believed he owned the property located at 10820 Gerald Allen Loop, the trial court erred in failing to include his requested mistake-of-fact instruction in the court's charge to the jury. Pease's Brief, p. 38.

18

Under the mistake-of-fact justification,

> [i]t is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated *the kind of culpability* required for commission of the offense.

TEX. PENAL CODE § 8.02(a) (West 2011) (emphasis added). As the statutory language shows, this defense applies only if the actor's mistake affects his culpable mental state concerning the commission of the offense charged. *See Wills v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990). Thus, to rely on the mistake-of-fact defense in a criminal-trespass case, the accused must show that he unintentionally or unknowingly entered or remained on the property after receiving notice that entry was forbidden. *See Moses v. State*, 814 S.W.2d 437, 442 (Tex. App.—Austin 1991, pet. ref'd) ("No culpable mental state is required under the criminal-trespass statute . . . other than a volitional refusal to leave when requested."). Allegations of mistake of fact concerning matters other than the required culpable mental state do not warrant such an instruction. *See, e.g., id.* (finding that, in a criminal-trespass case, an abortion protestor's mistaken belief that he was legally

19

justified in his obstructive tactic to remain on the clinic property did not entitle him to a charge on mistake of fact); *Thomas v. State*, 855 S.W.2d 212, 215 (Tex. App.—Corpus Christi 1993, no pet.) (holding that, in a criminal-trespass case, an abortion protestor's belief that he was attempting to save a human life does not entitle him to a charge on mistake of fact).

The issue of a defense's existence is not submitted to the jury unless evidence is admitted supporting the defense. TEX. PENAL CODE § 2.03(c) (West 2011). A defense is supported, or raised, by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). Because no evidence shows that Pease unintentionally or unknowingly entered on the property located at 10820 Gerald Allen Loop after receiving notice that entry was forbidden, the trial court did not err in refusing to include a mistake-of-fact instruction in the jury charge.

***Reply Point Seven** (**in response to Issues Four and Twelve**): **The State never alleged that Waller was the owner of the property, and therefore was not required to prove that she was.**

Pease contends that the State did not prove that Waller was the owner or the owner's agent, and therefore had no authority to issue him a criminal-trespass warning. Pease's Brief, pp. 16–19, 40. While the information never alleged Waller to be an owner, she met the statutory definition of an owner under the Penal Code.

"'Owner' [has] an expansive meaning: anyone having . . . a greater right to possession of the property than the defendant, is an owner of the property." *Garza v. State*, 344 S.W.3d 409, 412–13 (Tex. Crim. App. 2011) (interpreting TEX. PENAL CODE 1.07(a)(35)(A) (West Supp. 2015)). The evidence showed that Fannie Mae granted Waller authority over the property. 3 RR 82, 123; 5 RR State's Exhibits # 7, 9. Given Waller's superior right of possession, she had the authority to issue Pease a criminal-trespass warning.

*Reply Point Eight* (*in response to Issue Seven*)**: Nothing in the law requires the owner to appear in court, but Fannie Mae appeared through Waller.**

Pease's seventh point asks why, if Fannie Mae was the owner, did it not appear in court? Pease's Brief, p. 29. It is axiomatic that a governmental agency can only appear through its agents. In this case, that agent was Waller, who testified at trial. 3 RR 82, 123; 5 RR State's Exhibits # 7, 9.

*Reply Point Nine* (*in response to Issue Eight*)**: Pease was inhabiting the house when the he received a criminal-trespass warning.**

Pease's eighth point asks "Who was the inhabitant of the property when [Pease] got the criminal trespass warning?" Pease's Brief, p. 37. If this question presents anything for the Court's review, it has no bearing on any applicable legal issue, given the facts of this criminal-trespass case.

## PRAYER

For these reasons, the Travis County Attorney, on behalf of the State of Texas, asks this Court to overrule Pease's issues or points of error and affirm the judgment of conviction for criminal trespass.

22

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

_____
Giselle Horton
Assistant Travis County Attorney
State Bar Number 10018000
Post Office Box 1748
Austin, Texas  78767
Telephone: (512) 854-9415
TCAppellate@traviscountytx.gov

ATTORNEYS FOR THE STATE OF TEXAS

## CERTIFICATE OF COMPLIANCE

Relying on Corel WordPerfect's word-count function, I certify that this document complies with the word-count limitations of TEX. R. APP. P. 9.4. The document contains 5,301 words.

_____
Giselle Horton

23

## CERTIFICATE OF SERVICE

I certify that I have sent a complete and legible copy of this State's Brief via U.S. postage-prepaid mail, to Crae Pease at 6715 Skynook Drive, Austin, Texas 78745, on or before December 17, 2015.

Giselle Horton
Assistant Travis County Attorney

24