**Affirmed; Opinion Filed December 5, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01246-CR

### JOHNATHAN EUGENE COOPER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 297th District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 1031532D**

## MEMORANDUM OPINION
Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Carlyle

Pursuant to a written plea agreement, appellant Johnathan Eugene Cooper pleaded nolo contendere to sexual assault of a child under seventeen and was sentenced to two years' confinement. A year later, Mr. Cooper filed a motion for post-conviction DNA testing under Texas Code of Criminal Procedure Chapter 64, which the trial court granted. *See* TEX. CODE CRIM. PROC. art. 64.01–05. Following a hearing, the trial court signed an order stating it "finds that the results do not create a reasonable probability that the defendant would not have been convicted had they been available during his trial." *See id.* art. 64.04.

In a single issue on appeal, Mr. Cooper challenges the trial court's article 64.04 finding.[1] We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. Background

The indictment in this case charged Mr. Cooper with sexually assaulting K.C., a child under seventeen, in 2006. Mr. Cooper signed a June 5, 2013 plea agreement in which he stated he was represented by counsel and his plea was "knowingly, freely, and voluntarily entered." The plea agreement included the following "Judicial Confession":

> I UNDERSTAND ALL OF THE ALLEGATIONS IN THE INDICTMENT OR INFORMATION AND I DO NOT CONTEST THAT I COMMITTED EACH AND EVERY ALLEGATION IT CONTAINS, EXCEPT THOSE WAIVED BY THE STATE. I DO NOT CONTEST I AM GUILTY OF THE OFFENSE ALLEGED THEREIN AS WELL AS ALL LESSER INCLUDED OFFENSES, EXCEPT THOSE WAIVED BY THE STATE. . . . I SWEAR THAT ALL TESTIMONY I GIVE IN THE CASE WILL BE THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH, SO HELP ME GOD. . . . I STIPULATE THAT ALL ELEMENTS IN THE INDICTMENT WOULD BE PROVEN BEYOND A REASONABLE DOUBT BY THE STATE'S WITNESSES.

While incarcerated for that offense, Mr. Cooper filed an October 23, 2014 pro se motion for post-conviction DNA testing. He requested laboratory testing of biological evidence collected during an examination of K.C. after the alleged offense, including vaginal, vulvar, and perianal swabs. The trial court granted Mr. Cooper's motion in February 2015 and the Texas Department of Public Safety Crime Laboratory (DPS) conducted the requested forensic testing.

DPS issued three reports regarding the testing. First, in a January 27, 2016 report, DPS stated (1) "semen was detected" on K.C.'s vulvar swabs and perianal swabs, (2) "no semen was detected" on K.C.'s vaginal swabs, and (3) further DNA analysis would be performed on "selected samples from this case." Second, in a September 24, 2017 report, DPS stated (1) the DNA profile

---

[1] This appeal was originally filed in the Second Court of Appeals of Texas in Fort Worth. The Texas Supreme Court transferred it to this court pursuant to a September 26, 2018 docket equalization order. *See* TEX. GOV'T CODE § 73.001.

from the vaginal swabs was consistent with K.C.'s DNA profile, (2) the DNA profile from the vulvar swabs' "epithelial cell fraction" was consistent with K.C.'s DNA profile, (3) the DNA profile from the perianal swabs' "epithelial cell fraction" and the "partial DNA profile from the sperm cell fraction from the perianal swabs" were consistent with K.C.'s DNA profile, (4) "[i]nsufficient data is present for comparison from the sperm cell fraction from the vulvar swabs," and (5) "Y-STR (male-specific) DNA analysis will be performed on selected stains from this case." Third, in a December 13, 2017 report, DPS stated "[n]o Y-STR profiles were obtained" from K.C.'s vaginal, vulvar, or perianal swabs. At the State's request, DPS also provided a written "explanation on why no Y-STR DNA profiles were obtained from the vaginal swabs, the vulvar swabs, or the perianal swabs":

> Essentially, there was an insufficient amount of DNA foreign to the victim present on these items in order to develop an interpretable Y-STR profile for comparison to the reference sample from Johnathan Cooper. These results are consistent with the Forensic Biology testing results, in that the analyst did not detect the presence of semen on the vaginal swabs and only observed one spermatozoon each on the half of the vulvar and perianal swabs screened. Upwards of 50 to 100 spermatozoa are necessary to yield a Y-STR profile, based on internal validation studies.

Following that testing, the State filed a "Motion for a No Reasonable Probability of Non-Conviction Finding on Results of Post-Conviction DNA Testing" in which it argued (1) Mr. Cooper "pled nolo contendere, entered a written judicial confession that he did not contest committing this sexual assault, and stipulated that the State's witnesses would prove this sexual assault beyond a reasonable doubt"; (2) prior to entering his plea, "the defendant (through his counsel) had access to . . . [a] forensic serology report indicating the absence of seminal fluid on the vaginal and perianal swabs and of semen on the vaginal and vulvar swabs, and only the presumption of seminal fluid on the vulvar swab"; and (3) "[i]n other words, the DPS testing results do not provide any more forensic information than that available when the defendant made his decision to not contest guilt; thus, these results do not cast affirmative doubt on the validity of the

–3–

defendant's conviction." The attachments to the State's motion included a December 20, 2006 "forensic serology report" from the University of North Texas Health Science Center that stated (1) a "presumptive" test for "a major constituent of seminal fluid" on the vulvar swabs was "positive" and (2) "presumptive" tests for seminal fluid on the other swabs and for semen on all the swabs were "negative."

Mr. Cooper filed a February 13, 2018 pro se motion in which he stated he was indigent and requested appointed counsel for any DNA-testing proceedings. The trial court appointed counsel. At the August 2018 hearing regarding the DNA test results, Mr. Cooper's counsel argued, among other things, that (1) trial counsel "did not do that testing at the time of the plea"; (2) "an inconclusive result at the time when [Mr. Cooper] took the plea . . . may have influenced his decision whether or not to take the plea"; and (3) "without the DNA when he took the plea, I think that's something the Court needs to consider."

## II. Appellant's pending pro se motion in this court

As a threshold matter, we begin by addressing a pending October 10, 2019 pre-submission pro se motion Mr. Cooper filed in this court. The trial court appointed as appellate counsel the same attorney who had represented Mr. Cooper in the trial court DNA-testing proceeding. Starting in November 2018, Mr. Cooper filed several letters and pro se motions in this court complaining of his appointed counsel's "ineffective assistance" and requesting that new counsel be appointed for him or, alternatively, that he be allowed to proceed pro se. At Mr. Cooper's request, this court abated this appeal in January 2019 and ordered the trial court to hold a hearing to determine whether he should be appointed new counsel. Following that hearing, the trial court appointed new appellate counsel in February 2019.

In May 2019, Mr. Cooper sent this court a letter "objecting" to the appellate brief filed by his new counsel and requesting that he be allowed to proceed pro se. This court again abated this

appeal. The trial court held a June 14, 2019 hearing to determine "whether appellant desires to dismiss appointed counsel and represent himself pro se on appeal." During that hearing, Mr. Cooper stated to the trial court, "I will proceed with [current appointed counsel]." The trial court provided this court with a hearing transcript and signed an order that stated Mr. Cooper "does not desire" to dismiss appointed counsel and represent himself on appeal.

Mr. Cooper filed a June 14, 2019 letter in this court in which he stated (1) he "conditionally-declined to proceed pro-se" subject to an "off-the-record" agreement that current counsel would supplement the appellate brief to include certain complaints regarding Mr. Cooper's former counsel, and (2) "[i]f the request to timely supplement brief is not done, my retraction to proceed pro-se is involuntary, and re-assert my right to represent myself pro-se." This court issued a July 5, 2019 order stating, "If appellant desires to supplement his brief, he is **ORDERED** to file the supplemental brief, through counsel, within fifteen days of the date of this order." No supplemental brief was filed.

On July 9, 2019, Mr. Cooper filed a pro se motion stating he "retract[s] his statement to proceed with counsel" and "reasserts his right to pro-se self-representation," "due to new counsel failure to supplement brief as agreed to." This court denied that motion in a July 11, 2019 order that stated in part, "After the parties have filed briefs, after the appeal was abated twice for hearings regarding appellant's representation, and after appellant expressly declined the opportunity to represent himself and decided to accept counsel's representation, we conclude appellant's renewed interest in pro se representation comes too late and would delay the orderly administration of justice." This case was set for appellate submission on October 16, 2019.

On July 31, 2019, Mr. Cooper filed a letter in this court in which he reasserted his request to represent himself and stated he requests new counsel based on "conflicts" regarding supplementing his appellate brief. Also, he filed an August 15, 2019 pro se "objection" to this case

being submitted in this court, requesting abatement on the same bases described in his July letter, and an October 10, 2019 pro se "Emergency-Interest of Justice Reconsideration Motion to Address and Follow U.S. Supreme & Court Case Law Rules" both of which were carried with the case.

In Mr. Cooper's October 10, 2019 reconsideration motion, he asks this court to "reconsider/re-evaluate abatement to trial court for proper procedure of appellant timely re-asserted pro-se self representation right or to determine if substitute counsel is warranted for good cause." As to his first abatement ground, Mr. Cooper contends this court's July 11, 2019 conclusion that his "renewed interest in pro se representation comes too late and would delay the orderly administration of justice" is "not supported by the record." For the same reasons articulated in this court's July 11, 2019 order, we decline to order further abatement regarding pro se representation.

As to Mr. Cooper's request to again substitute counsel, his motion (1) cites case law regarding substitution of appointed counsel when a "conflict of interest" is shown and (2) argues "[c]ounsel refusal to raise the agreed claims in order to get appellant to forgo his right to self-representation caused a conflict" and thus obligated this court to order a hearing for further inquiry or to appoint new counsel. "A criminal defendant is not entitled to appointed counsel of choice." *Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991). A court has no duty to search for counsel who is agreeable to the defendant, and the right to counsel cannot be insisted upon in such a way as to obstruct the orderly administration of justice. *Anderson v. State*, No. 02-17-00044-CR, 2018 WL 359635, at *6 (Tex. App.—Fort Worth Jan. 11, 2018, no pet.) (mem. op., not designated for publication) (citing *Gonzales v. State*, 532 S.W.2d 343, 345 (Tex. Crim. App. 1976)).

The defendant carries the burden of proving he is entitled to new counsel. *Id*. "An 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his

client's interest." *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997). If a timely request to substitute counsel based on an alleged conflict of interest is made, courts are required to investigate such requests. *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). But it is not always necessary for the court to hold a hearing concerning an alleged conflict when a substitution motion does not advance a valid basis for the asserted conflict. *See, e.g., Calloway v. State*, 699 S.W.2d 824, 830–31 (Tex. Crim. App. 1985) (declining to find trial court neglected duty to hold hearing when substitution motion did not advance valid basis for asserted conflict). Generally, conclusory allegations of conflicts of interest, disagreements on trial strategy, and personality conflicts are insufficient to satisfy the defendant's burden. *See King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *Carroll v. State*, 176 S.W.3d 249, 256 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

Here, although Mr. Cooper requests new counsel based on an alleged "conflict," his allegations are conclusory and his complaints describe a disagreement on strategy. Further, like his abatement request regarding pro se representation, his request for further abatement for substitution-of-counsel proceedings after the parties have filed briefs, the appeal was abated twice for hearings as to his representation, and he expressly decided to accept counsel's representation, "comes too late and would delay the orderly administration of justice." *See Anderson*, 2018 WL 359635, at *6. We deny Mr. Cooper's October 10, 2019 reconsideration motion.[2]

## III. Appellant's challenge to trial court's Chapter 64 finding

If the convicting court orders DNA testing under Chapter 64 of the Texas Code of Criminal Procedure, article 64.04 requires the court, after examining the results of testing, to "hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it

---

[2] Also, to the extent Mr. Cooper's August 15, 2019 "objection" has not become moot upon this case's submission, we overrule that objection for the same reasons.

is reasonably probable that the person would not have been convicted." CRIM. PROC. art. 64.04. A "reasonable probability" exists when there is a probability sufficient to undermine confidence in the outcome of the trial. *Baggett v. State*, 110 S.W.3d 704, 706 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

When reviewing an article 64.04 finding, we apply a bifurcated standard. *Dunning v. State*, 572 S.W.3d 685, 692 (Tex. Crim. App. 2019). We afford almost total deference to a trial court's resolution of historical facts and mixed questions that turn on credibility and demeanor, but review de novo mixed questions that do not turn on credibility and demeanor and questions of law. *Id.*; *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

Under article 64.04, "the question is whether the inculpatory evidence—including Appellant's guilty plea, judicial confession, his testimonial confession, and other inculpatory evidence adduced at the Chapter 64 hearing—is so undermined by the test results that it is reasonably probable that a fact-finder would not have convicted Appellant had the tests been available at trial despite the inculpatory evidence." *Dunning*, 572 S.W.3d at 694; *see also Rivera*, 89 S.W.3d at 59 ("The ultimate question of whether a reasonable probability exists that a person would not have been convicted had the DNA results been available at trial is a question of law that we review de novo."). "Chapter 64 is not an invitation to review every potential error in the underlying trial proceedings" and does not "confer jurisdiction on appellate courts to consider collateral attacks on the trial court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles." *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd). When the trial court does not enter separate findings, we imply findings necessary to support the ruling so long as they are reasonably supported by the record. *Dunning*, 572 S.W.3d at 692.

A guilty plea is typically strong evidence supporting a non-favorable article 64.04 finding because "[c]onvicting courts should . . . give great respect to knowing, voluntary, and intelligent pleas of guilty." *Id*. at 694. While a guilty plea does not preclude a favorable finding under article 64.04, if there is no reason to believe that a defendant's plea was inaccurate or unreliable, that plea should be given great weight. *Id*. at 694–95.

In his sole issue, Mr. Cooper contends the trial court erred by finding that the DNA test results did not create a reasonable probability that he would not have been convicted had they been available during his trial. According to Mr. Cooper, the DNA test results are "inconsistent with the [trial court's] ruling on the issue that, it is likely the Appellant is the perpetrator."

The record shows Mr. Cooper entered his nolo contendere plea "knowingly, freely, and voluntarily" while represented by counsel. At that time, forensic testing performed in 2006 showed that a "presumptive" test for "a major constituent of seminal fluid" on the vulvar swabs was "positive" and all other "presumptive" tests for seminal fluid and semen were "negative. DPS's subsequent DNA testing showed DNA profiles consistent with K.C.'s, but "there was an insufficient amount of DNA foreign to the victim present on these items in order to develop an interpretable Y-STR profile for comparison to the reference sample from Johnathan Cooper." No test established the presence of a male's DNA that did not match Mr. Cooper's DNA. "Thus, while the test results did not add any further corroboration for appellant's guilt, they also did not affirmatively link someone else to the crime or conclusively exclude appellant's commission of it." *See Solomon v. State*, No. 02-13-00593-CR, 2015 WL 601877, at *5 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op., not designated for publication). The question we must address is "whether the inculpatory evidence—including Appellant's guilty plea, judicial confession, his testimonial confession, and other inculpatory evidence adduced at the Chapter 64 hearing—is so undermined by the test results that it is reasonably probable that a fact-finder would not have

convicted Appellant had the tests been available at trial despite the inculpatory evidence." *Dunning*, 572 S.W.3d at 694. In light of the DPS test results' inconclusiveness, we conclude Mr. Cooper's judicial confession is not so undermined by those results that it is reasonably probable that a fact-finder would not have convicted him had the results been available when he entered his plea. *See id*. We decide Mr. Cooper's issue against him and affirm the trial court's order.[3]

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181246F.U05

---

[3] To the extent Mr. Cooper seeks to complain of ineffective assistance of trial counsel, Chapter 64 does not "confer jurisdiction on appellate courts to consider collateral attacks on the trial court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles." *Reger*, 222 S.W.3d at 513; *cf. Ex parte Munoz*, No. WR-28,195-06, 2015 WL 375925, at *1 (Tex. Crim. App. Jan. 28, 2015) (order per curiam) (stating that if counsel misled defendant about DNA evidence in his case, that would warrant habeas relief).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHNATHAN EUGENE COOPER,
Appellant

No. 05-18-01246-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 297th District Court,
Tarrant County, Texas
Trial Court Cause No. 1031532D.
Opinion delivered by Justice Carlyle.
Justices Pedersen, III and Reichek
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of December, 2019.